IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| A-1 A-LECTRICIAN, INC.; H.Q. INCORPORATED, dba Aloha Products; GP ROADWAY SOLUTIONS, INC. (formerly Sun Industries, Inc.); HAWAIIAN ISLAND TIRE CO., INC., dba American Tire Company; ISLAND LIGHTING CO., INC.; JACK ENDO ELECTRIC, INC.; MARK LURIA; MEGA CONSTRUCTION, INC.; MUTUAL PLUMBING SUPPLY CO., INC.; PACIFIC JOBBERS WAREHOUSE, INC.; ROYAL CONTRACTING CO., LTD.; THE SOLARAY CORPORATION (formerly Inter-Island Solar Supply); TRITON MARINE CONSTRUCTION CORP.; UNITED TRUCK RENTALS AND EQUIPMENT LEASING, INC.; WALKER-MOODY CONSTRUCTION CO., LTD.; and RALPH S. INOUYE CO., LTD.,<br><br>    Movants,<br><br>    v.<br><br>COMMONWEALTH REIT; SELECT INCOME REIT; MASTERS PROPERTIES LLC; ROBIN 1 PROPERTIES LLC; TSM PROPERTIES LLC; and SIR REIT,<br><br>    Respondents. | Civ. No. 12-00607 ACK-BMK |

**ORDER STAYING PROCEEDINGS TO ALLOW FOR LIMITED DISCOVERY**

For the following reasons, the Court STAYS proceedings in this action and in the underlying arbitrations, so that the parties may undertake limited discovery as to whether the original parties to the leases either (1) intended to permit consolidation or (2) later amended their agreements to permit consolidation.

**FACTUAL BACKGROUND**

Lessees are sixteen small business tenants who have ten years remaining on separate long-term leases for lots in an Oahu industrial estate. (Motion To Compel ("MTC") at 1.) The twenty-four leases (some Lessees rent more than one lot) are between Lessees and three landlords, Masters Properties LLC, Robin 1 Properties LLC, and TSM Properties LLC. (Motion To Dismiss ("MTD") at 8; Reply re MTD at 2.) There are other tenants in the same industrial estate who are not a party to this action; Lessees comprise roughly one-third of the tenants on the estate. (See MTC Ex. 39.)

Lessees (or their predecessors-in-interest) entered into the leases with the Damon Estate, the previous owner of the land, between November 1972 and April 1973 (except one lease which was executed in 1994). (MTC at 1.) CommonWealth REIT (then operating under a different name) bought the land from the Damon Estate in 2003. (Id.) The interests in the various lots were later transferred to the three current landlords, Masters, Robin, and TSM, which are affiliates of CommonWealth. (Id. at 6.) The three landlord companies have only one "member," SIR REIT, which is a wholly-owned subsidiary of Select Income REIT. (Doc. No. 4 at 4.) Select is a majority-owned subsidiary of CommonWealth. (Id. at 3.) For convenience, the Court will refer to Masters, Robin, TSM, CommonWealth, SIR, and Select as, collectively, "Lessors."

The leases in question contain largely identical terms and conditions, including an identical provision regarding the periodic setting of new rents. (See, e.g., MTC Ex. 1 at 12-13.) Rents are to be redetermined every ten years. (Id. at 2.) If the parties fail to agree on the new rent, one party will choose one real estate appraiser, and the other party will choose another appraiser. (Id. at 12.) Those two appraisers will then together choose a third appraiser, or will ask the state circuit court to choose the third appraiser if they cannot agree. (Id. at 12-13.) The three appraisers will determine a "fair and reasonable" annual rent, in a decision which will be "final, conclusive and binding upon the parties." (Id. at 13.)

The rent for the final ten-year period, from 2013 to 2022, is now at issue. The parties' negotiations over the new rent have failed. (MTD at 9.) Lessees therefore initiated appraisal proceedings under each individual lease and are now engaged in twenty-four separate proceedings, though appraisals apparently have not yet begun. (Id.; see MTC at Ex. 40.) Lessees seek to consolidate all twenty-four appraisals into one proceeding. (MTC at 2.) Lessors want the appraisals to proceed separately. (MTD at 14-15.) Lessees have presented evidence that during the 1980s and 1990s the Damon Estate negotiated rents collectively with a tenants' association, and that in 1992-1993 it engaged in a consolidated arbitration as to the rents for a neighboring industrial estate. (See Opp'n to MTD, Decls. & Exs. 3-6.) Lessees assert that the evidence they have presented

shows the requisite intent to allow consolidation, but have also requested the opportunity to conduct limited discovery regarding the intent of the original parties to the leases.

## **PROCEDURAL HISTORY**

Lessees originally filed a motion to consolidate the appraisals in state court. (See Doc. No. 1 & Exs.) On November 9, 2012, Lessors timely removed the action to this Court, invoking federal diversity jurisdiction. (Doc. No. 1.)

Lessors filed a Motion To Dismiss the motion to consolidate on December 17, 2012. (Doc. Nos. 25-33.) On December 19, 2012, Magistrate Judge Kurren issued an order noting that Lessees needed to re-file their motion to consolidate before this Court. (Doc. No. 36.) Lessees filed the instant Motion To Consolidate on December 26, 2012. (Doc. No. 37.) On January 31, 2012, Lessors filed an Opposition to the Motion To Consolidate, and Lessees filed an Opposition to the Motion To Dismiss. (Doc. Nos. 44 & 45.) The parties filed Replies in support of their respective motions on February 28, 2013. (Doc. Nos. 49 & 50.)

After examining the parties' briefs, the Court on April 3, 2013 issued an order requesting supplemental briefing from the parties as to whether the Court has authority to rule on the merits of consolidation, or whether that is a procedural question that the arbitrators must decide. (Doc. No. 52.) The parties filed their supplemental briefs on April 15, 2013. (Doc. Nos. 53 & 54.) A hearing on the parties' motions was held on April 23, 2013.

**DISCUSSION**

**I.   Motion To Dismiss**

Technically, Lessors' Motion To Dismiss the motion to consolidate was procedurally improper. Federal Rule of Civil Procedure ("Rule") 12(b) allows for motions to dismiss to assert defenses "to a claim for relief in any pleading." Fed. R. Civ. P. 12(b) (emphasis added). A motion is not a pleading, Parker v. United States, 110 F.3d 678, 682 & n.9 (9th Cir. 1997); see Fed. R. Civ. P. 7(a), and so a motion to dismiss cannot be filed against a motion. Lessees did not raise this objection, however, and both sides merely used their briefing on the "motion to dismiss" to present further arguments on the merits of the motion to consolidate. The Court will therefore consider the "motion to dismiss" as a cross-motion for an order directing the arbitrations to proceed separately.

**II.  Does the FAA Apply to These Agreements?**

The first question for the Court is whether the Federal Arbitration Act ("FAA") governs this dispute, or whether this dispute is purely a question of state law. In re Van Dusen, 654 F.3d 838, 844 (9th Cir. 2011) (holding that before contemplating a motion to compel arbitration the district court must determine

whether the FAA applies to the agreement at issue).[1/] The Court finds that the FAA applies here.

It is true that "[t]he FAA is not the only way into court for parties wanting review of [a dispute concerning arbitration]: they may contemplate enforcement under state statutory or common law, for example . . . ." Hall St. Assocs., 552 U.S. at 590. "The FAA . . . do[es] not extend to all arbitration agreements. As Section 2 makes clear, the Act applies only to contracts 'evidencing a transaction involving commerce,' or arising from a 'maritime transaction.'" In re Van Dusen, 654 F.3d at 842-43.

Nonetheless, the Supreme Court has held that "[b]ecause the [FAA] provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause,' it is perfectly clear that the FAA encompasses a wider range of transactions than those actually . . . 'within the flow of interstate commerce.'" Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003) (quoting Perry v. Thomas, 482 U.S. 483, 490 (1987), and Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273 (1995)). Application of the FAA is not defeated because the individual transactions did not affect interstate commerce; "Congress's Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the

---

[1/] It makes no difference that Lessees' Motion was originally filed in state court and does not invoke the FAA. The FAA applies to cases falling within its jurisdiction "whether enforcement be sought in state court or federal." Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 582 (2008).

economic activity in question would represent 'a general practice . . . subject to federal control.'" Citizens Bank, 539 U.S. at 56-57 (quoting Mandeville Is. Farms, Inc. v. Am. Crystal Sugar Co., 334 U.S. 219, 236 (1948)).

A handful of courts have found that the FAA did not apply to an arbitration over a real estate transaction. See SI V, LLC v. FMC Corp., 223 F. Supp. 2d 1059, 1062 (N.D. Cal. 2002) (finding that FAA does not apply in an arbitration dispute over a real estate sale); Cecala v. Moore, 982 F. Supp. 609, 612 (N.D. Ill. 1997) (finding FAA did not apply in arbitration dispute over representations made in residential real estate sale); Saneii v. Robards, 289 F. Supp. 2d 855, 859 (W.D. Ky. 2003) (finding FAA does not apply to single sale of residential real estate); see Garrison v. Palmas Del Mar Homeowners Ass'n, Inc., 538 F. Supp. 2d 468, 475 (D.P.R. 2008) (suggesting without deciding that the FAA did not apply to intrastate real estate transactions).

But all the above cases involved one-time real estate sales, not, as here, more than twenty multi-decade leases to commercial businesses. Cf. Hall Street Assocs., 552 U.S. at 590 (in commercial landlord-tenant dispute, "[t]here was never any question about meeting the FAA § 2 requirement that the leases from which the dispute arose be contracts 'involving commerce'"). Indeed, in a different context the Supreme Court has held that the rental of real property is an activity which "unquestionably" affects interstate commerce: "We need not rely on the connection between the market for residential units and the interstate

7

movement of people to recognize that the local rental of an apartment unit is merely an element of a much broader commercial market in rental properties." Russell v. United States, 471 U.S. 858, 860 (1985); see id. at 862 (rental property is property "used . . . in an activity affecting interstate . . . commerce" under the federal arson statute); cf. Hackman v. Dickerson Realtors, Inc., 520 F. Supp. 2d 954, 959 (N.D. Ill. 2007) (applying FAA where arbitration provision was contained in the bylaws of a local Illinois realtors' association because even local realty activities affect interstate commerce).

For the foregoing reasons, the Court finds that the FAA applies here, as long as the "appraisal" clauses in question are agreements to "arbitrate" under the meaning of the FAA - a question to which the Court now turns.

### III. Does this Dispute Concern an Arbitration Under the Meaning of the FAA?

The parties' leases do not mention "arbitration" or "arbitrators." Instead, they discuss appointing "real estate appraisers" to resolve rent disputes between the parties. The Court must determine whether these clauses can be construed as "arbitration agreements" under the FAA. The Court concludes that they can.

The Ninth Circuit has long held that the definition of "arbitration" when applying the FAA should be provided by the applicable state law, as long as that definition is not inconsistent with federal law. Wasyl, Inc. v. First Bos. Corp., 813 F.2d 1579, 1582 (9th Cir. 1987) (applying California

arbitration statutes' definition and treating an "appraisal" as an arbitration); see Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n, 218 F.3d 1085 (9th Cir. 2000) (applying Oregon state law definition and declining to treat an "appraisal" as an arbitration).[2/] Thus, Hawaii state law dictates whether the leases' appraisal provisions should be construed as agreements to arbitrate.

Under Hawaii state law, if an agreement provides that disputes will be submitted to an appraisal panel and that the panel's decision is to be "final, conclusive and binding," the provision should be construed as an agreement to arbitrate. Loyalty Dev. Co. v. Wholesale Motors, Inc., 605 P.2d 925, 928 (Haw. 1980). Here, the leases state that the appraisers' decision shall be "final, conclusive, and binding." (MTC Ex. 1 at 13.) The appraisal provisions are therefore agreements to arbitrate under Hawaii law, and under the FAA as applied in this circuit.[3/]

---

[2/] There is a circuit split on this issue. The First, Sixth, and Tenth Circuits apply the federal common law definition of "arbitration," while the Fifth and Ninth Circuits apply state law. Evanston Ins. Co. v. Cogswell Props., LLC, 683 F.3d 684, 693 (6th Cir. 2012) (collecting cases). The application of state law has been questioned, see Bakoss v. Certain Underwriters, 707 F.3d 140, 143-44 (2d Cir. 2013) ("[T]he circuits that apply state law have articulated few reasons for doing so."); Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 6 (1st Cir. 2004) (noting that Wasyl "assumed without real analysis that state law governed"), and a subsequent Ninth Circuit panel expressly questioned whether Wasyl was correctly decided, see Portland Gen. Elec., 218 F.3d at 1091 (Tashima, J., concurring); id. at 1091-92 (McKeown, J., specially concurring). Wasyl remains good law, however.

[3/] This analysis would likely be different if this circuit applied the federal common law definition of arbitration. See, e.g., Salt Lake Tribune Pub. Co. v. Mgmt. Planning, Inc., 390

9

## IV. **May the Court Decide Consolidation?**

The Supreme Court has made clear that, unless the arbitration agreement states otherwise, only "gateway" questions, such as whether the parties have agreed to arbitrate at all, are for the courts to decide; "procedural" questions about how the arbitration should be conducted are for the arbitrators to decide. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002); see Momot v. Mastro, 652 F.3d 982, 987 (9th Cir. 2011) (discussing Howsam and noting that the only issues that "remain within the province of judicial review" are "gateway questions of arbitrability, such as whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy"). Nonetheless, the Court finds that it may decide the consolidation question under the unique circumstances of this case.

Here, the parties apparently agree that they must arbitrate their rent disputes – they merely disagree about whether to proceed in separate arbitrations or in one consolidated arbitration. The Ninth Circuit has not addressed in any published opinion how Howsam's reasoning applies to a motion to consolidate arbitrations.[4] But every other circuit court of

---

F.3d 684, 689-90 (10th Cir. 2004) (finding that an "appraisal" was not an "arbitration" under federal common law).

[4] The Ninth Circuit has in fact held that under Howsam, consolidation should be decided by the arbitrator not the court, but did so in a very short, unpublished memorandum opinion. See Certain Underwriters at Lloyd's v. Cravens Dargan & Co., 197 Fed.

appeals to address the question has found that, under <u>Howsam</u> and its progeny, consolidation should be decided by the arbitrators, not the courts, unless the parties agree otherwise. <u>See</u> <u>Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.</u>, 489 F.3d 580, 585-87 (3d Cir. 2007); <u>Emp'rs Ins. Co. of Wausau v. Century Indem. Co.</u>, 443 F.3d 573, 576-78 (7th Cir. 2006); <u>Shaw's Supermarkets, Inc. v. United Food & Commc'l Workers Union</u>, 321 F.3d 251, 254 (1st Cir. 2003); <u>see also</u> <u>Davis v. ECPI Coll. of Tech., LLC</u>, 227 Fed. App'x 250, 253-54 (4th Cir. March 20, 2007) (unpublished) (holding that unconscionability of consolidation waiver was a question for the arbitrator).

      The Supreme Court has repeatedly held that a district court's duty under the Federal Arbitration Act is to enforce agreements to arbitrate "according to their terms." <u>AT&T Mobility LLC v. Concepcion</u>, 131 S. Ct. 1740, 1748 (2011) (citation omitted); <u>see</u> <u>Samson v. NAMA Holdings, LLC</u>, 637 F.3d 915, 923-24 (9th Cir. 2010) (citations omitted). In this case, the arbitration provisions in the leases are fairly simple, and do not say anything at all about consolidation (or about procedures in general, beyond those for selecting the arbitrators).

      Nonetheless, it appears that both parties now want the consolidation issue to be decided by this Court, rather than a panel of arbitrators. Both parties argued in their supplemental

---

App'x 645 (9th Cir. 2006). Since the opinion was unpublished and was issued before January 1, 2007, it is not citable as precedent and the Court is not relying on it. <u>See</u> U.S. Ct. of App. 9th Cir. Rule 36-3; Fed. R. App. P. 32.1.

briefs that the Court should decide the question, and both parties orally stipulated at the hearing on their motions that they agree to have the Court decide it. As Lessors point out, this fact distinguishes the instant case from any of the circuit court of appeals' decisions cited above. (See Resps.' Supp. at 4 & n.2.) It is clear that parties may agree to a scheme other than the "presumptive" division of labor set out in Howsam. See Howsam, 537 U.S. at 85 (court decides substantive issues and arbitrator decides procedural issues "in the absence of an agreement to the contrary"); Momot, 652 F.3d at 987 (parties agreed to delegate to arbitrator issue presumptively reserved for the court). The Court therefore finds that, since both parties here have voluntarily submitted the consolidation issue to the Court, the Court may decide the question.

## V. Did the Parties Agree To Consolidation?

The Court must now interpret the substance of the parties' arbitration clause.

The Supreme Court and the Ninth Circuit have repeatedly held that the interpretation of an arbitration agreement is generally a matter of state law. E.g., Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp., 130 S. Ct. 1758, 1773 (2010) (citing Arthur Andersen LLP v. Carlisle, 129 S. Ct. 1896, 1901-02 (2009); Perry, 482 U.S. at 493); Cape Flattery Ltd. v. Titan Maritime, LLC, 647 F.3d 914, 920 (9th Cir. 2011) ("The general rule in interpreting arbitration agreements is that courts 'should apply ordinary state-law principles that govern the formation of

12

contracts.'" (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995))).

Here, however, the Court's required course of action is not so clear. Lessors argue that under Weyerhaeuser Co. v. Western Seas Shipping Co., 743 F.2d 635 (9th Cir. 1984), the Court should not look to state-law interpretation rules at all, but should simply deny Lessees' Motion To Consolidate because the written lease agreements - undeniably - do not expressly permit consolidation. (Reply re MTD at 9.) This is a difficult issue, but ultimately the Court disagrees with Lessors.

Weyerhaeuser was decided nearly thirty years ago. In the intervening decades, many Supreme Court and Ninth Circuit decisions have held that a court must apply state-law principles to interpret an arbitration agreement. See, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62-64 & n.9 (1995) (applying New York and Illinois law); Biller v. Toyota Motor Corp., 668 F.3d 655, 662 (9th Cir. 2012) (applying California law); Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1210 (9th Cir. 1998) (same); see also Stolt-Nielsen, 130 S. Ct. at 1768 (explaining that the proper response when presented with an arbitration agreement that is "silent" on an issue is "to identify the rule of law that governs in that situation" under either the FAA or state law).[5]

---

[5] A case that was argued before the Supreme Court last month, Oxford Health Plans LLC v. Sutter, No. 12-135, may further illuminate what evidence a court may examine, other than the explicit words of the arbitration agreement, to evidence the parties' intent. The Court notes, however, that Oxford Health,

13

Weyerhaeuser did not explicitly hold that a district court should not look to state law to interpret an arbitration agreement - in fact, Weyerhaeuser gave no guidance at all as to how a court should determine what the parties agreed to. But to the extent that Weyerhaeuser implicitly conflicts with these intervening Supreme Court and Ninth Circuit precedents, the Court finds that it must follow the intervening precedents, which have direct application in this case. The Court will therefore apply state law to interpret the arbitration agreements at issue here.

Under Hawaii state law, "it is well settled that courts should not draw inferences from a contract regarding the parties' intent when the contract is definite and unambiguous." Williams v. Aona, 210 P.3d 501, 515 (Haw. 2009). In this case, however, the arbitration provisions are not "definite and unambiguous" as regards consolidation; they say nothing about consolidation at all. In such cases, Hawaii courts have looked to extrinsic evidence of the parties' intent. See United Indep. Ins. Agencies, Inc. v. Bank of Honolulu, 718 P.2d 1097, 1104 (Haw. Ct. App. 1986) ("Unfortunately the Purchase Agreement is silent concerning the voting rights. Therefore, [the issue] is dependent upon the intent of the parties to be gleaned from other evidence in the record."); Urban Research Studies & Dev., Ltd. v. Teruya & Sons, Ltd., 639 P.2d 1115, 1117 (Haw. Ct. App. 1982) ("Since the option

---

like Stolt-Nielsen, deals with class arbitration, not consolidated arbitration, and involves New Jersey law, not Hawaii law. See 675 F.3d 215 (3d Cir. 2012). Nonetheless, the Court may consider the Oxford Health decision if it is issued soon and provides any guidance.

agreement [is] silent as to the manner and method of exercise of the option, we think the manner and method of exercise must depend on the intention of the parties which is to be gathered from the documents and depositions before the court below.").

Lessees argue that, since the question of the parties' underlying intent is at issue, Lessees should be allowed to conduct limited discovery as to the parties' intent. (Opp'n to MTD at 21.) The Court agrees. Discovery may proceed only as to whether the original parties to the leases either (1) intended to permit consolidation or (2) later came to a new agreement to permit consolidation.

## VI. Does Hawai'i's Consolidation Statute Apply?

Finally, Lessees appear to argue that even if the parties did not agree to consolidation, the Court may force consolidation upon the Lessors under Hawaii Revised Statutes § 658A-10. (Opp'n to MTD at 20-21.)[6] The Court disagrees. Chapter 658A of the Hawaii Revised Statutes explicitly applies only to arbitration agreements made on or after July 1, 2002. Haw. Rev. Stat. § 658A-3(a). As to arbitration agreements made before July 1, 2002, the chapter governs only "if all the parties to the agreement or to the arbitration so agree in a record." Id. § 658A-3(b). Here, the parties clearly have not agreed otherwise. In the absence of such an agreement, the arbitration agreement

---

[6] Counsel for Lessees appeared to disavow this argument at the hearing on the motions, arguing instead that the state law merely illuminated the parties' intent. The Court nonetheless addresses this issue for the completeness' sake.

15

"shall be governed by the law specified in the agreement to arbitrate or, if none is specified, by the state law in effect on June 30, 2002." Id. In this case, the arbitration clause does not specify a law under which to be governed, and the state arbitration act in effect prior to July 1, 2002 did not provide for consolidation. See Haw. Rev. Stat. ch. 658 (1993) (repealed 2002).

Moreover, as discussed above, the FAA requires federal courts to enforce arbitration agreements according to their terms. 9 U.S.C. § 4. In order to do so, the Court must inquire as to what terms the parties agreed to. The Court may not, however, order a procedure that the parties did not agree to.[7] Such an order would not be consistent with the FAA, which "imposes . . . the basic precept that arbitration is a matter of consent, not coercion." Stolt-Nielsen, 130 S.Ct. at 1773; see also id. at 1776 ("[W]e see the question as being whether the parties agreed to authorize class arbitration. Here, where the parties stipulated

---

[7] Both parties argue that their chosen procedure is the more practical and efficient. Lessors' position that consolidation would create a "gargantuan" proceeding that would discourage settlements is undercut by their own representation in SEC filings that "[w]e do not believe that the results for determining rent resets will materially differ whether determined pursuant to a single arbitration or instead by separate appraisal proceedings." (Reply re MTC, Ex. 41, at 28.) These arguments are ultimately irrelevant, however, since the Supreme Court has made clear that the Court's duty is to "rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985); see id. at 220 ("We . . . reject the suggestion that the overriding goal of the [FAA] was to promote the expeditious resolution of claims."); Polimaster Ltd. v. RAE Sys., Inc., 623 F.3d 832, 840-41 (9th Cir. 2010).

that there was 'no agreement' on this question, it follows that the parties cannot be compelled to submit their dispute to class arbitration." (emphasis in original)).

## **CONCLUSION**

For the foregoing reasons, the Court STAYS these proceedings, and those in the underlying arbitrations, so that the parties may undertake limited discovery as to whether the original parties to the leases either (1) intended to permit consolidation or (2) later amended their agreements to permit consolidation. The parties' motions are held in abeyance. Limited discovery shall close on June 3, 2013. No later than June 10, 2013, each side shall file a supplemental brief, complying with the federal and local standards for a summary judgment motion. Each side will then have seven days to file any rebuttal to the other side's supplemental brief.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, April 26, 2013



_____
Alan C. Kay
Sr. United States District Judge

A-1 A-Lectrician, Inc. v. CommonWealth REIT, Civ. No. 12-00607 ACK-BMK, Order Staying Proceedings To Allow for Limited Discovery